UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMSHID ZAHRAIE,

                Petitioner,                            Case No. 1:17-cv-13131

v.                                              Honorable Thomas L. Ludington
                                                        United States District Judge
CHANDLER CHEEKS,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

After a Tuscola County jury found Petitioner Jamshid Bakshi Zahraie guilty of six counts of racketeering and drug charges, he was sentenced to 15 to 40 years of imprisonment. In February 2021, Petitioner filed an amended *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 21. He raises 14 claims challenging his convictions.

For reasons discussed below, Petitioner's amended petition will be dismissed with prejudice, a certificate of appealability will be denied, and Petitioner will be denied leave to appeal *in forma pauperis*.

**I.**

In May 2014, a Tuscola County jury convicted Petitioner Jamshid Bakshi Zahraie of conducting an enterprise through a pattern of racketeering activity, MICH. COMP. LAWS § 750.159i(1), unlawful possession of a controlled substance with intent to deliver, MICH. COMP. LAWS §§ 333.7272(1)(e) and 333.7401(2)(b)(ii), unlawful manufacture of a controlled substance, *id.*, unlawful delivery of a controlled substance, *id.*, unlawful possession of a controlled substance, *id.*, and maintaining a drug house, MICH. COMP. LAWS §§ 333.7405(1)(d) and 333.7406. ECF No.

21 at PageID.231. The trial court sentenced Petitioner to of 15 to 40 years' imprisonment for the racketeering conviction and to lesser concurrent terms for the remaining six convictions. *Id.*

In February 2021, he filed an amended *pro se* Petition for Writ of Habeas Corpus, raising 13 claims, including claims regarding lack of evidence, admission of hearsay testimony, ineffective assistance of counsel, and deprivation of constitutional rights. *Id.* at PageID.248–334. He then filed a motion to add two claims concerning jury instruction error and juror bias, ECF No. 29, which this Court granted in part by permitting Petitioner to add a jury-bias claim, ECF No. 35. Petitioner's convictions arose from selling synthetic marijuana from his party store and gas station, and manufacturing materials for synthetic marijuana from his apartment.[1] *See generally People v. Zahraie*, No. 321835, 2015 WL 4169311 (Mich. Ct. App. July 9, 2015). The following facts as recited by the Michigan Court of Appeals are presumed correct on habeas review. *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009); 28 U.S.C. § 2254(e)(1).

> On June 30, 2012, Michigan State Police (MSP) troopers in Tuscola County participated in an MSP initiative to advise store owners that K2 and other types of synthetic marijuana would be illegal as of July 1, 2012. Trooper Nathan Hopp advised Jamshid, the owner of Gran's Party Mart and the Clark gas station in Caro, and his ex-wife, Kirsta, who was working at Gran's on that day, of the impending change in the law. Of the thirty-eight stores visited that day in Tuscola County as part of the initiative, troopers observed synthetic marijuana only at Gran's and the Clark station.

> Lapeer police detective A.J. Wetzel, a member of the TNU, participated in a controlled purchase of suspected synthetic marijuana at Gran's on July 20, 2012, after receiving several tips that synthetic marijuana was being sold at the store. Jamshid told Wetzel that he was sold out of a brand of synthetic marijuana known as "Spice," but showed Wetzel the different types of synthetic marijuana that he had. Wetzel purchased one packet of "Skunk" for $20 and one packet of "Sativa" for $15. Jamshid indicated that these brands were not as good as Spice, but were smokable. Wetzel made a second controlled purchase of suspected synthetic marijuana at Gran's on August 22, 2012. Kirsta told Wetzel that a brand called "Sachet" was not available and that they only had what was under the counter.

---

[1] Petitioner was tried jointly with codefendant Kirsta Zahraie. The Michigan Court of Appeals consolidated the appeals.

Wetzel purchased one packet of "Blue Jay" from Kirsta for $15 or $20. When Wetzel asked Kirsta if Blue Jay would get him high, Kirsta said that "everyone was buying it so it must be okay."

Both Jamshid and Kirsta were present at Gran's during an administrative tobacco inspection led by MSP trooper Michael Leddy on January 17, 2013. Trooper Leddy observed brands of synthetic marijuana known as K3, Super Nova, and Diesel in a glass display in an area containing smoking apparatuses, glass pipes, and rolling papers. A large amount of several brands of synthetic marijuana was also found in boxes in three separate unlocked basement rooms. Jamshid stated that he had removed the illegal products from the shelves and put it in the basement and that he did not know that the products in the glass case were illegal. MSP Trooper Andrew Feehan testified that he informed Jamshid on this date that he could not sell synthetic marijuana. A total of 40 pounds of suspected synthetic marijuana was seized and a sample of each brand was sent to the crime laboratory for analysis. According to Leddy, no field test for synthetic marijuana is available. The laboratory report indicated that substances known as AM–2201, XLR–11, UR–144, and EAM–2201 were found in the tested samples. The report indicated that AM–2201 is a schedule 1 controlled substance in Michigan, and that XLR–11 was not presently a listed controlled substance under Michigan or federal law.

Kirsta was present at Gran's during a second administrative tobacco inspection led by MSP detective-sergeant Michael Foley on March 27, 2013. According to Foley, Kirsta was uncooperative and refused to provide identification. During the inspection, Foley observed several packets of suspected synthetic marijuana under a glass counter, in a grocery bag that Kirsta had attempted to hide, and in the basement. Approximately 1,400 packets of suspected synthetic marijuana were seized from Gran's that day. XLR–11 was detected in five of the sample packets that were analyzed by the crime laboratory.

Detective Jason Miner participated in a controlled purchase of suspected synthetic marijuana at Gran's on April 25, 2013. In response to Miner's request for Spice, Kirsta said that they had an all-natural product called Super Nova. Miner purchased one packet of Super Nova from Kirsta for $15. A laboratory analysis indicated that the sample contained XLR–11. Trooper Feehan testified that he told Jamshid and Kirsta that they could not sell products containing XLR–11.

On April 29, 2013, Jerry Donley made a controlled purchase of suspected synthetic marijuana at the Clark station. Donley told Kirsta that he wanted to purchase Spice, and she told him that Spice was no longer available but that other smokable products similar to Spice were available. Donley purchased one package each of two different brands for $25, and Kirsta provided free rolling papers. Laboratory analysis of the product detected the presence of XLR–11.

On May 2, 2013, members of the TNU executed search warrants at the Clark station, at Gran's, and at the apartment that Jamshid and Kirsta shared. 585 packets

of Super Nova marked "Not for human consumption" and $114,024 in cash were seized from the Clark station. Troopers also found an invoice for the purchase of $3,100 worth of Super Nova from a company called Clear Smoke. During the search at Gran's, approximately 50 packets of K3 and Super Nova were found in a glass case and under the front counter, and several thousand empty silver packets were found in the basement. The empty packets were the same as the filled packets but did not contain a label or substance. A laboratory analysis of the Super Nova sample detected XLR–11.

During the search of the apartment, troopers found a total of 2,223 packets of suspected synthetic marijuana, including 1,300 packets of Super Nova packaged in 1.5 gram, 3.5 gram, and 6 gram packets. Several pounds of plant material, flavorings, foil packets, acetone, scales, measuring cups, syringes, trays, labels, grinding utensils, and a recipe for synthetic marijuana using the controlled substance JWH–018. According to MSP Lieutenant Doug Rogers, an expert on possession with intent to deliver narcotics, the items seized suggested that synthetic marijuana was being manufactured for distribution. Laboratory analysis of the samples seized from the apartment showed that JWH–018 was found on loose plant material in Ziploc baggies that were found in the pantry. Another baggie containing loose plant material and a flavoring bottle contained XLR–11. A packet of a brand of synthetic marijuana called "Scooby Snax" that was found in the pantry contained the controlled substance AM–2201. The Super Nova packets found in the pantry showed the presence of XLR–11. Bulk bags in the pantry that were labeled "Stratosphere" contained controlled substances JWH–250, JWH–018, and AM–2201. A packet labeled "Magnolia Rush II Max" that was found in the pantry contained XLR–11.

Dr. Gregory Endres, an expert in organic chemistry in the identification, classification, manufacture, and pharmacological effects of synthetic marijuana, opined XLR–11 is a schedule 1 controlled substance under the controlled substances act as amended on July 1, 2012.

Jamshid acknowledged that troopers told him on June 30, 2012, that all synthetic marijuana was becoming illegal. Jamshid believed that the Super Nova he purchased from Clear Smoke was legal based on a disclaimer that he read on the internet and a laboratory report from the vendor. He admitted that he made K3 using a base leaf of damiana leaf and lavender bud to which he added flavoring, and that he continued to sell K3 because he believed it was legal. Jamshid admitted that he had a recipe for making synthetic marijuana that contained JWH–018, but he denied making any products using the recipe. Jamshid testified that some of his customers smoke K3 and some use it for aromatherapy; approximately 15 to 20 percent of his gross sales are from the sale of Super Nova and K3. Jamshid testified that the synthetic marijuana the troopers found in the basement at Gran's was the product that he had removed from the store shelves because it contained chemicals and was illegal. He explained that the large amount of cash seized from the gas station came from a settlement with his former employer in 2001 and from real estate

transactions. Jamshid testified that Kirsta is not his employee, that they are divorced, and that she rents a room from him for so that she can assist with the care of their children. He testified that Kirsta does not work at his stores and that she merely covers for him for a half-hour or an hour when he has errands to run.

Kirsta testified that she was divorced from Jamshid and that she moved in with him in 2009 because he needed help with their children. She stated that she had her own bedroom in the apartment and that she paid $250 in monthly rent. Kirsta testified that she is not Jamshid's employee, that she receives no pay, that she does not own any businesses, and that she does not assist with the business records or accounting at Gran's or the Clark gas station. She admitted that she assisted Jamshid at his stores two days a week. Kirsta testified that she did not know that the products she was selling contained a controlled substance and that she relied on Jamshid's statements that the substances they were selling were legal. Kirsta denied ever seeing Jamshid make synthetic marijuana or sell it from their apartment. She also denied knowledge of the items in the pantry, with the exception of cleaning items and acetone for her fingernails.

*See People v. Zahraie*, No. 321835, 2015 WL 4169311, at *1–4 (Mich. Ct. App. July 9, 2015).

The trial court sentenced Petitioner to 15–40 years' imprisonment for the racketeering conviction and to lesser concurrent terms for the other convictions. *See id.* at *1. Appealing as of right, Petitioner argued that:

(1) the catchall language of MICH. COMP. LAWS § 333.7201(1)(e)(x) is unconstitutionally vague;
(2) the evidence was insufficient to sustain his conviction for conducting a criminal enterprise;
(3) the trial court erred by admitting evidence of prior purchases of synthetic marijuana from Petitioner's stores;
(4) he was denied due process of law because no hearing was held to determine the existence of his prior convictions;
(5) his right of confrontation was violated by the admission of hearsay testimony;
(6) the prosecutor committed misconduct by eliciting testimony from an expert witness that XLR-11 is a Schedule I controlled substance; and
(7) the trial court's refusal to admit a laboratory report denied him the right to present a defense.

*See generally Zahraie*, 2015 WL 4169311.

The Michigan Court of Appeals rejected Petitioner's arguments and affirmed his convictions in an unpublished, per curiam opinion. *See Zahraie*, 2015 WL 4169311, at *12.

- 5 -

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, which remanded Petitioner's case to the trial court for a determination of whether the trial court would have imposed a materially different sentence under the sentencing procedure described in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). *See People v. Zahraie*, 875 N.W.2d 212 (Mich. 2016). The Michigan Supreme Court denied leave to appeal in all other respects. *See id*. On June 28, 2016, the Michigan Supreme Court denied reconsideration. *People v. Zahraie*, 880 N.W.2d 569 (Mich. 2016). On October 3, 2016, the United States Supreme Court denied certiorari. *See Zahraie v. Michigan*, 137 S. Ct. 115 (2016).

Meanwhile, in August 2016, the trial court held a resentencing hearing, as directed by the Michigan Supreme Court, and affirmed its initial sentence in an oral decision. Petitioner appealed the trial court's ruling, but the Michigan Court of Appeals dismissed his claim of appeal for lack of jurisdiction because the trial court had not entered a final judgment or order after its resentencing hearing. *See People v. Zahraie*, No. 334853 (Mich. Ct. App. Oct. 12, 2016).

On November 29, 2016, the trial court issued a final order declining to resentence Petitioner but granting him a new claim of appeal and appointing him appellate counsel. On March 20, 2017, as the sentencing decision was progressing through the state courts, Petitioner filed his first federal habeas corpus petition and a motion to stay the case pending exhaustion of state remedies. *See Zahraie v. McCullik*, No. 1:17-cv-10875, ECF No. 4 (E.D. Mich. Mar. 30, 2107). Petitioner raised fourteen claims:

> (1) he was convicted under an unconstitutionally vague statute;
> (2) he was charged under an "inapplicable" statute;
> (3) he was denied the effective assistance of appellate counsel;
> (4) he was denied the effective assistance of trial counsel;
> (5) there was outrageous governmental conduct during the investigation;
> (6) he was subjected to illegal searches and seizures;
> (7) he was denied the right to present a complete defense;
> (8) insufficient evidence was presented at trial to sustain his convictions;

(9) the government exercised racially motivated peremptory strikes of jurors;
(10) the trial court erroneously admitted certain evidence at trial;
(11) the jury instructions were erroneous;
(12) the trial judge was biased against him and committed misconduct;
(13) the cumulative effect of the errors rendered his trial unfair; and
(14) he was entitled to re-sentencing

*See generally id.*

The Court summarily dismissed the petition without prejudice and denied the motion for a stay as unnecessary because Petitioner was still exhausting state remedies and was not in danger of running afoul of the habeas statute of limitations *Id.* The Court denied Petitioner's Motion for Reconsideration on August 29, 2017. *See Zahraie v. McCullik*, No. 1:17-CV-10875, 2017 WL 3720460, at *1 (E.D. Mich. Aug. 29, 2017).

On September 22, 2017, Petitioner commenced this, his second, case by filing an additional habeas corpus petition, ECF No. 1, an application to proceed without prepaying fees or costs, ECF No. 2, and a motion to stay the federal proceeding until he could file a proper post-conviction motion in state court, ECF No. 3. This second Petition raised the same fourteen claims raised in Petitioner's first Petition. On November 16, 2017, Petitioner's Motion to Stay was denied, his Petition was summarily dismissed without prejudice, and his case was closed. ECF No. 9. This Court noted that Petitioner's direct appeal from the trial court's new judgment of sentence was still pending in the Michigan Court of Appeals and that the statute of limitations would not begin to run until 90 days after appellate proceedings on Petitioner's sentencing claim concluded.

On February 13, 2018, the Michigan Court of Appeals affirmed Petitioner's sentences in an unpublished opinion. *People v. Zahraie*, No. 336023, 2018 WL 842913, at *1, 3 (Mich. Ct. App. Feb. 13, 2018). Petitioner subsequently filed for leave to appeal in the Michigan Supreme Court, raising three new claims concerning the effectiveness of trial and appellate counsel. *See People v. Zahraie*, 913 N.W.2d 294 (Mich. 2018). The Michigan Supreme Court denied leave

because it was not persuaded that the questions presented should be reviewed by the Court. *Id.*

On August 13, 2018, Petitioner returned to the trial court and filed a motion for relief from judgment, raising the following claims:

(1) he was charged under an "inapplicable" statute;
(2) he was convicted under an unconstitutionally vague statute and deprived of fair notice;
(3) appellate counsel provided ineffective assistance;
(4) trial counsel provided ineffective assistance;
(5) he was deprived of search and seizure rights under the Fourth Amendment;
(6) the government exercised racially motivated peremptory strikes of jurors; and
(7) he was entitled to re-sentencing.

ECF No. 31-12. Petitioner also filed a motion to disqualify the trial court judge from deciding his motion for reconsideration, which was ultimately denied. ECF No. 31-25, PageID.4022. The trial court denied the motion for relief from judgment, ruling that Petitioner's first two claims were barred by Michigan Court Rule 6.508(D)(2), that his ineffective-assistance-of-appellate-counsel claim was meritless, and that his remaining claims were barred by Mich. Ct. R. 6.508(D)(3). ECF No. 31-15. The trial court further denied Petitioner's motion for reconsideration. *Id.*

Petitioner filed for leave to appeal in the Michigan Court of Appeals, but the Court denied leave because Petitioner "failed to establish that the trial court erred in denying the motion for relief from judgment." ECF No. 31-23, PageID.3534. Petitioner applied for leave to appeal in the Michigan Supreme Court but was denied relief under Mich. Ct. Rule 6.508(D). *People v. Zahraie*, 944 N.W.2d 695 (Mich. 2020). The Michigan Supreme Court further denied Petitioner's motion for reconsideration. *People v. Zahraie*, 948 N.W.2d 561 (Mich. 2020).

On July 27, 2020, Petitioner filed a motion to reopen this case. ECF No. 18. His motion was granted and Petitioner was directed to file an amended petition. ECF No. 19. On February 9, 2021, Petitioner filed his amended Petition raising 13 claims. ECF No. 21. On May 28, 2021,

Petitioner moved to supplement his Petition with two new claims. ECF No. 29. This Court granted the Motion in part and allowed Petitioner to add one additional claim regarding judicial bias. *See* ECF No. 35 at PageID.5222–23. Thus, Petitioner asserts the following grounds for habeas relief:

I. Petitioner was convicted on insufficient evidence of a criminal enterprise and a lack of evidence that the substance was a controlled substance within the meaning of the statute.

II. The state court erred when admitting alleged prior bad acts when the evidence was not relevant or material, not for a proper purpose, and/or substantially outweighed by unfair prejudice.

III. The Michigan Court of Appeals abused its discretion where it denied petitioner's Sixth Amendment right to a trial by jury, when the Michigan Court of Appeals affirmed his conviction on controlled substances that the jury did not consider as an element of the offense during the trial. Petitioner cannot be convicted of the crime because the prohibited "drug" is unconstitutional as a result of being vague and overbroad.

IV. The right of confrontation was violated by the admission of hearsay testimony of Blaine McGowen and Tamara Mathys, when they testified to the ill effects that "spice" had on others, in violation of the Sixth and Fourteenth Amendments.

V. The prosecutor committed misconduct by eliciting testimony from an expert in violation of Michigan Rule of Evidence 702, and Federal Rule of Evidence 702, without conducting a *Daubert* hearing.

VI. The state court violated Petitioner's right to present a defense.

VII. Petitioner was deprived of his constitutional right to have substantive and procedural process under the Due Process Clause of the Fourteenth Amendment when the Tuscola County Prosecutor charged him with violating Michigan's controlled substances law under an inapplicable statute.

VIII. Petitioner was deprived of his constitutional right to have fair notice under the Due Process Clause of the Fourteenth Amendment where MICH. COMP. LAWS § 333.7212(1)(e)(x)—the "catchall" clause—is void for vagueness.

IX. Petitioner was deprived of his Sixth Amendment right to effective assistance of appellate counsel.

X. Petitioner was deprived of his Sixth Amendment right to effective assistance of trial counsel.

XI. Petitioner was deprived of his constitutional right under the Fourth Amendment's limitation on unreasonable search and seizure.

XII. Petitioner was deprived of his constitutional rights under the Sixth and Fourteenth Amendment because the government exercised racially motivated peremptory strikes of jurors.

XIII. Petitioner is entitled to re-sentencing.

XIV. Petitioner's due process rights were violated as a result of judicial bias.

ECF Nos. 21 at PageID.225–26; 29 at PageID.824.

Respondent urges this Court to deny habeas relief because the state courts' rejection of Petitioner's claims was not contrary to, or an unreasonable application of, clearly established federal law. *See* ECF No. 30 at PageID.952–56. Alternatively, Respondent argues that Petitioner's claims are not cognizable on federal habeas review, are procedurally defaulted, are meritless, or are moot. *See id.*

## II.

The following standard of review applies to § 2254 habeas petitions:

A petition for a writ of habeas corpus brought by a person in custody pursuant to a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if it either (1) applies a standard different than what Supreme Court precedent says to apply or (2) applies the correct precedent to materially indistinguishable facts but reaches a different result. *Williams v.*

*Taylor*, 529 U.S. 362, 397, 405–06, 413 (2000). But a state decision that applies a state-law standard is not "contrary to" clearly established Federal law if the state standard is practically similar to the Supreme Court's. *See Robertson v. Morgan*, No. 20-3254, 2020 WL 8766399, at *4 (6th Cir. Dec. 28, 2020) (holding state decision was not "contrary to" because it applied a state-law standard bearing "some similarity" to the *Brady* standard).

The Antiterrorism and Effective Death Penalty act of 1996 "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). If the state decision was not "contrary to" clearly established Federal law, then it "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In this way, to obtain habeas relief in federal court, a state prisoner must show that the state court's denial "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A petition should be denied if it is within the "realm of possibility" that fairminded jurists could find the state decision to be reasonable. *See Woods v. Etherton,* 587 U.S. 113, 113 (2016) (per curiam). For claims the state court adjudicated on the merits, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

# III.

## A. Procedural Default

At the outset, this Court notes that although Respondent argues Petitioner has procedurally defaulted several of his claims of error, this Court is not obligated to address that defense because procedural default is not a jurisdictional bar to review the merits. *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020); *Trest v. Cain*, 522 U.S. 87, 89 (1997)); *see also Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)) ("[F]ederal courts are not required to address a procedural default issue before deciding against the petitioner on the merits[.]") The Sixth Circuit recognizes that its decisions "may sometimes reach the merits of a petitioner's claim, particularly when the merits are easily resolvable against the petitioner while the procedural issues are complicated." *Smith*, 962 F.3d at 207 (citing *Lambrix*, 520 U.S. at 525); *see also id*. (finding "resolution of the procedural issues . . . not necessary [and] that the claim is better resolved on the merits"). Here, the procedural-default analysis will not affect the outcome of this case, and it is more efficient for this Court to proceed directly to the merits of Petitioner's claims.

## B. Sufficiency of the Evidence

Petitioner first argues the prosecution failed to present sufficient evidence to convict him of conducting a criminal enterprise/racketeering at trial. ECF No. 21 at PageID.248–49. The Michigan Court of Appeals rejected this claim, concluding that the evidence presented at trial was sufficient to sustain the conviction:

> Jamshid argues that the evidence was insufficient to sustain his conviction of conducting a criminal enterprise because there was no evidence of criminal activity. He contends that the evidence did not show that he knew or should have known that the products he possessed were unlawful because the illegal nature of a substance cannot be determined by looking at it. However, precise knowledge of the nature of a substance is not required for conviction as long as the defendant was aware that

- 12 -

the product was a controlled substance. *People v. Zion*, 93 Mich. App 576, 578; 287 NW2d 6 (1979). Here, law enforcement officers informed Jamshid that K2 and synthetic marijuana would be illegal as of July 1, 2012. Jamshid had direct contact with law enforcement on at least three occasions and had a large quantity of synthetic marijuana confiscated on more than one occasion after July 1. Jamshid admitted that the products he had in the basement of Gran's were illegal. The jury could reasonably draw an inculpatory inference that Jamshid knew the substance to be a controlled substance from the evidence presented.

Jamshid further argues that there was no evidence presented that the sale of the alleged controlled substances was part of a criminal enterprise or that there was a concert of action between himself and Kirsta. He contends that Kirsta was merely someone who helped out in the stores and who had no interest in the business. Viewed in a light most favorable to the prosecution, the evidence revealed that Kirsta shared an apartment with Jamshid, that all of the components of a synthetic marijuana manufacturing operation were present in the apartment, that both Kirsta and Jamshid sold controlled substances in the stores, and that a large sum of cash was discovered in one of the stores. This evidence was sufficient to allow the jury to find that Jamshid and Kirsta engaged in a criminal enterprise.

Lastly, Jamshid argues that insufficient evidence was presented to support his remaining drug-related convictions because he did not know that the substances were controlled substances. As discussed above, however, the evidence was sufficient to allow the jury to infer that Jamshid knew or should have known that the substances he was making and selling were controlled substances.

*See Zahraie*, 2015 WL 4169311, at *8-9.

The Michigan Court of Appeals' ruling was not contrary to, or an unreasonable application of, clearly established federal law. The Fourteenth Amendment Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the

criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence must survive two layers of deference to groups who might view facts differently than a reviewing court on habeas review—the factfinder at trial and the state court on appellate review—as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788–89.

The Michigan statute for conducting a criminal enterprise provides, in relevant part, that "[a] person employed by, or associated with, an enterprise shall not knowingly conduct or participate in the affairs of the enterprise directly or indirectly through a pattern of racketeering activity." Mich. Comp. Laws § 750.159i(1). The statute defines racketeering as, inter alia, "committing, attempting to commit, conspiring to commit, or aiding or abetting, soliciting, coercing, or intimidating a person to commit an offense for financial gain[.]" Mich. Comp. Laws § 750.159g(c). And a "pattern of racketeering activity," in turn, is defined as not less than 2 incidents of racketeering to which all of the following characteristics apply:

(1) The incidents have the same or a substantially similar purpose, result, participant,

victim, or method of commission, or are otherwise interrelated by distinguishing
characteristics and are not isolated acts.
(2) The incidents amount to or pose a threat of continued criminal activity.
(3) At least 1 of the incidents occurred within this state on or after the effective date
of the amendatory act that added this section, and the last of the incidents occurred
within 10 years after the commission of any prior incident, excluding any period of
imprisonment served by a person engaging in the racketeering activity.

MICH. COMP. LAWS § 750.159f(c); *see also People v. Martin*, 721 N.W.2d 815, 842–43 (Mich. Ct.
App. 2006).

In this case, the prosecution presented evidence that Petitioner knowingly sold synthetic
marijuana at Gran's Party Mart and the Clark gas station after the product became illegal on July
1, 2012. The prosecution also presented evidence that before July 2012, police informed Petitioner
that synthetic marijuana was becoming illegal. ECF No. 31-5, PageID.1632–40. Although
forewarned, Petitioner continued to sell synthetic marijuana in his stores. Detective Wetzel
testified that on July 30, 2012, he entered Petitioner's store for the undercover purchase of
synthetic marijuana called "Spice." ECF No. 31-5 at PageID.1655–57. He testified that Petitioner
told him that he did not have Spice, but assisted him with the purchase of other synthetic marijuana
brands. *Id*. at PageID.1657. Detective Wetzel further testified that he made another purchase of
synthetic marijuana at Gran's Mart on August 22, 2012, with Ms. Zahraie's assistance. *Id*. at
PageID.1662–63.

And other witnesses testified that Petitioner continued to sell marijuana after July 2012.
Ryan Mueller testified that in December 2012, he drove to Petitioner's store with a friend who was
interested in purchasing "K2," another strain of synthetic marijuana. Petitioner showed them the
products he had in his display case, including the synthetic marijuana "Super Nova." ECF No. 31-
5 at PageID.1686. Thomas Devine testified that he purchased synthetic marijuana from Gran's
from July 2012 through May 2013, when it was ultimately removed from the store. ECF No. 31-6

at PageID.1852. On January 17, 2013, the police conducted an administrative tobacco inspection at Gran's. Trooper Feehan testified that he told Petitioner that he could not sell the product because it was illegal. ECF No. 31-6 at PageID.1901. But Petitioner was uncooperative. *Id*. at PageID.1904. On March 27, 2013, police conducted a second administrative tobacco inspection where they seized approximately 1,400 packets of synthetic marijuana from Gran's store and discovered several packets of K2 displayed for purchase. *Id.* at PageID.1815–16. In May 2013, the police executed multiple search warrants for Petitioner's businesses, vehicle, and apartment. *Id.* at PageID.1958. The police seized synthetic marijuana from all locations and seized $114,024 in cash from the Clark store. *Id*. Additionally, an invoice from a company called "Clear Smoke" showed Petitioner recently purchased $3,100 worth of Super Nova, a synthetic marijuana product. *Id*. at PageID.1960.

The prosecution also presented sufficient evidence of Ms. Zahraie's regular involvement in selling synthetic marijuana at Gran's. For instance, Trooper Hopp testified that Ms. Zahraie informed him that she was an employee of Gran's. ECF No. 31-5 at PageID.1637. Despite Ms. Zahraie's testimony that she only helped at Gran's occasionally, several witnesses testified about her regular presence at Gran's and her sales assistance. ECF Nos. 31-5 at PageID.1636; 31-6 at PageID.1878, 1917–18. And the record shows that Petitioner and Ms. Zahraie jointly resided in an apartment where Petitioner maintained the necessary items to conduct a synthetic marijuana manufacturing operation. *See* ECF Nos. 31-8 at PageID.2405; 31-6 at PageID.1997.

From this evidence a jury could reasonably infer that Petitioner conducted a criminal enterprise and, on more than two occasions, knowingly sold illegal synthetic marijuana for financial gain and likely would have continued to do so. Because any rational trier of fact could

have found the essential elements of the conducting a criminal enterprise/racketeering beyond a

reasonable doubt, Petitioner's first claim is without merit.

### C. Evidentiary Error

Petitioner next argues that the trial court improperly admitted evidence of other wrongful

acts in violation of Michigan Rule of Evidence 404(b). ECF No. 21 at PageID.255–61.

Specifically, Petitioner challenges the prosecution's evidence that he continued selling synthetic

marijuana after being informed of its illegality. *Id.*

The Michigan Court of Appeals rejected Petitioner's argument and concluded:

Testimony regarding defendant's prior activity and transactions was not improper
under [Michigan Rule of Evidence] 404(b). Testimony that defendant possessed
and sold synthetic marijuana to store patrons after being informed of the illegality
of synthetic marijuana tends to show that defendant engaged in a criminal enterprise
during the period alleged in the information. And, the evidence was sufficiently
probative to outweigh any danger of unfair prejudice.

*See Zahraie*, 2015 WL 4169311, at *10.

There is no merit in Petitioner's claim that "other acts" evidence was improperly introduced

at his trial under Michigan Rule of Evidence 404(b), because the alleged violation of the Michigan

Rules of Evidence is not a cognizable claim on federal habeas corpus review. *Hall v. Vasbinder*,

563 F.3d 222, 239 (6th Cir. 2009). "[A] federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62,

68 (1991). "[S]tate-court evidentiary rulings cannot rise to the level of due process violations

unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our

people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)

(quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).

To the extent that Petitioner's claim implicates due process protections, the Supreme Court

has declined to hold that the admission of "other acts" evidence is so extremely unfair that it

violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352–53 (1990). The Supreme Court has discussed when other-acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), but has not addressed the issue in constitutional terms. Such matters are more appropriately addressed in rules of evidence and procedure. *Dowling*, 493 U.S. at 352. Moreover, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1). *Id.* at 513. Accordingly, Petitioner will be denied habeas relief on this claim.

### D. MICH. COMP. LAWS § 333.7212(1)(e)(x)

Petitioner brings three claims challenging the constitutionality and applicability of MICH. COMP. LAWS § 333.7212(1)(e)(x). Because these claims are related, this Court will discuss them together. Petitioner argues that (1) the catchall language of § 333.7201(1)(e)(x) is unconstitutionally vague because it did not adequately notify him that XLR–11 was illegal, ECF No. 21 at PageID.263–66; (2) he was charged under the wrong statute, *id.* at PageID.280–84; and (3) he was deprived of his due process right to fair notice because § 333.7212(1)(e)(x) is void for vagueness. ECF No. 21 at PageID.285–86.

The Michigan Court of Appeals rejected Petitioner's constitutional challenge and concluded that even if the catchall language of § 333.7201(1)(e)(x) is unconstitutionally vague, Petitioner's convictions were valid on other grounds:

> The offenses with which defendants were charged prohibited the unlawful possession with intent to deliver, unlawful manufacture, unlawful delivery, unlawful possession, and keeping or selling, a controlled substance—specifically,

synthetic cannabinoids (marijuana). At the time of defendants' arrests, MCL 333.7212(1) provided, in relevant part:

> The following controlled substances are included in schedule 1:
>
> * * *
>
> (e) Synthetic cannabinoids. As used in this subdivision, "synthetic cannabinoids" includes any material, compound, mixture, or preparation that is not otherwise listed as a controlled substance in this schedule or in schedules II through V, is not approved by the federal food and drug administration as a drug, and contains any quantity of the following substances, their salts, isomers (whether optical, positional, or geometric), homologues (analogs), and salts of isomers and homologues (analogs), unless specifically excepted, whenever the existence of these salts, isomers, homologues (analogs), and salts of isomers and homologues (analogs) is possible within the chemical designation:
>
> [subsections (i) through (ix) describe specific chemical compounds]
>
> (x) Any other synthetic chemical compound that is a cannabinoid receptor agonist and mimics the pharmacological effect of naturally occurring cannabinoids that is not listed in schedules II through V and is not approved by the federal food and drug administration as a drug.

Defendants argue that the catchall language of MCL 333.7201(1)(e)(x) is unconstitutionally vague because it did not adequately notify them that XLR–11 was illegal because a reasonable person does not know which substances are cannabinoid receptor agonists and mimic the effect of naturally occurring cannabinoids. Jamshid also argues that the statute conferred unfettered discretion on the trier of fact to determine whether a compound "mimics the pharmacological effects of naturally occurring cannabinoids."

A statute is presumed to be constitutional and will be construed as such unless its unconstitutionality is clearly apparent. *People v. Hubbard* (After Remand), 217 Mich. App 459, 483–484; 552 NW2d 493 (1996), overruled in part on other grounds by *People v. Harris*, 495 Mich. 120, 123; 845 NW2d 477 (2014), and *People v. Bryant*, 491 Mich. 575, 618; 822 NW2d 124 (2012). The constitutional doctrines of vagueness and overbreadth are distinct doctrines, but they are related in the sense that both curb arbitrary and discriminatory enforcement. *Van Buren Twp v. Garter Belt, Inc*, 258 Mich. App 594, 628; 673 NW2d 111 (2003). A penal statute is unconstitutionally vague or overbroad if "(1) it does not provide fair notice of the conduct proscribed, (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense had been committed, or (3)

- 19 -

its coverage is overly broad and impinges on First Amendment Freedoms." *People v. Vronko*, 228 Mich. App 649, 652; 579 NW2d 138 (1998). "The doctrine of overbreadth is primarily applied to First Amendment cases where an overbroad statute prohibits constitutionally protected conduct." *People v. Cavaiani*, 172 Mich. App 706, 711; 432 NW2d 409 (1988). In this case, defendants do not assert that the application of MCL 333.7212(1)(e)(x) impinges on any First Amendment freedoms or other constitutionally protected activity. Accordingly, the doctrine of overbreadth does not apply. *Vronko*, 228 Mich. App at 652. "When a defendant's vagueness challenge does not implicate First Amendment freedoms, the constitutionality of the statute in question must be examined in light of the particular facts at hand without concern for the hypothetical rights of others." *Id.*

"A statute provides fair notice when it gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *People v. Gratsch*, 299 Mich. App 604, 610; 831 NW2d 462 (2013), vacated on other grounds 495 Mich. 876 (2013). "To evaluate a vagueness challenge, this Court must examine the entire text of the statute and give the words of the statute their ordinary meanings." *People v. Hrlic*, 277 Mich. App 260, 263; 744 NW2d 221 (2007). "Reference to a dictionary is appropriate to determine the ordinary meaning of a word." *People v. Wilson*, 230 Mich. App 590, 592; 585 NW2d 24 (1998). A statute may not use a term that requires persons of ordinary intelligence to speculate about its meaning and differ about its application, but "[a] statute is sufficiently definite if its meaning can fairly be ascertained by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." *Gratsc*h, 299 Mich. App at 610 (citation and quotation marks omitted). The party challenging the constitutionality of a statute bears the burden of proving that the law is unconstitutional. *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich. 1, 11; 740 NW2d 444 (2007).

The record reveals that JWH–250, JWH–018, and AM–2201 were found during the execution of the search warrant at defendants' apartment on May 2, 2013. These chemical compounds are specifically listed as synthetic cannabinoids in MCL 333.7212(1)(e)(i) and (v). Additionally, AM–2201 was found at Gran's during an inspection on January 17, 2013. Therefore, even if the catchall definition for synthetic cannabinoids in MCL 333.7212(1)(e)(x) were found to be unconstitutionally vague, defendants' convictions would still stand in the absence of the evidence of XLR–11. "The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *People v. McKinley*, 496 Mich. 410, 415–416 n. 4; 852 NW2d 770 (2014), quoting *Ashwander v. Tenn Valley Auth*, 297 U.S. 288, 347; 56 S Ct 466; 80 L Ed 688 (1936).

*See Zahraie*, 2015 WL 4169311, at *4-6.

The Michigan Court of Appeals' ruling was not contrary to, or an unreasonable application of, clearly established federal law. The appellate court determined that it need not reach Petitioner's constitutional question because the record established that his convictions would stand on other statutory grounds. *See id.* The appellate court's decision to decline the constitutional question on this basis was not unreasonable. The Supreme Court has held that such resolution is appropriate when faced with an issue that can be decided on more than one ground. *See Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter."). The state-court record supports the conclusion that Petitioner violated the statute of conviction by possessing with the intent to deliver other chemical compounds specifically listed as synthetic cannabinoids. ECF No. 31-7, PageID.2068–71. Thus, the appellate court correctly concluded that Petitioner's convictions would stand even if he successfully challenged § 333.7212(1)(e)(x). Because Petitioner's convictions would be upheld under other provisions of the statute of conviction, he is not entitled to habeas relief on his claims challenging the constitutionality of § 333.7201(1)(e)(x). Accordingly, this Court will not address Petitioner's remaining arguments challenging his conviction under this statute.

### E. Confrontation Clause

Petitioner argues that the prosecution violated his Sixth Amendment right to confrontation by introducing witness testimony addressing the ill effects of synthetic marijuana in others who did not testify. ECF No. 21 at PageID.267–71. The Michigan Court of Appeals reviewed this claim for plain error and rejected Petitioner's argument on the basis that the testimony presented was not hearsay. The panel concluded:

> Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

MRE 801(c). The admission of hearsay evidence is generally prohibited. MRE 802. Here, however, the basis for McGowan's and Mathys' testimony was their own personal observations. Accordingly, this testimony was not hearsay, as there was no out-of-court statement made by a declarant that formed the basis of either witness's testimony regarding their observations of others who had smoked synthetic marijuana that had been purchased from Jamshid's stores. Thus, their testimony was not hearsay and the admission of the evidence did not violate defendant's right of confrontation.

*See Zahraie*, 2015 WL 4169311, at *11.

The Michigan Court of Appeals' ruling was not contrary to, or an unreasonable application of, clearly established federal law. The Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause provides criminal defendants the right to confront and cross examine witnesses against them. *See, e.g., Davis v. Alaska*, 415 U.S. 308, 315 (1973). The right to confront adverse witnesses generally prevents a court from admitting an out-of-court statement against a criminal defendant. *California v. Green*, 399 U.S. 149, 155-58 (1970). The Sixth Amendment protections, however, are not so broad as to exclude the admission of all hearsay statements against a defendant despite his or her inability to confront the declarant at trial. *See Maryland v. Craig*, 497 U.S. 836, 847–48 (1990). The constitutionality of admitting a hearsay statement depends on whether the statement is testimonial or non-testimonial in nature and on the circumstances surrounding the making of the statement.

In *Crawford v. Washington*, the Supreme Court held that out-of-court statements that are "testimonial" in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross examination regardless of whether the trial court finds the statements to be reliable. 541 U.S. 36, 68 (2004). The Confrontation Clause is not implicated, however, when the hearsay at issue is non-testimonial. *See Davis v. Washington*, 547 U.S. 813, 823–26 (2006). The proper inquiry in deciding whether a statement is testimonial is

"whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2005).

Here, Petitioner has not shown that the witnesses' testimony violated his confrontation rights. During trial, Blaine McGowan testified that he accompanied his brother to Petitioner's store to purchase synthetic marijuana. ECF No. 31-6 at PageID.1834. He further testified that he observed his brother become sick from smoking the product, which he smoked frequently. *Id*. at PageID.1834–35. At one point, McGowan went to the store to confront Petitioner and asked him to stop selling the product to his brother. *Id*. at PageID.1838. McGowan testified that Petitioner "pushed [him] out of [the] store." *Id*. Tamara Mathys testified that in January and February of 2013, she drove a friend to Petitioner's store once or twice a week for purchase of synthetic marijuana. *Id*. at PageID.1871–72. Mathys observed that her friend "would act very tired, he was losing weight and sometimes he would be sick, had like flu-like symptoms." *Id*. at PageID.1866. She further testified that her friend moved to Florida because of his addiction. *Id*. at PageID.1867.

Neither McGowan nor Mathys based their testimony on any out-of-court statements made by a declarant who was not testifying. Rather, both witnesses testified about their personal observations regarding other individuals' experiences with the synthetic marijuana purchased in Petitioner's store. "A witness's testimony about his personal observations of an event is not an out-of-court statement and, thus, is not 'hearsay.'" *Garcia-Dorantes v. Warren*, 769 F. Supp. 2d 1092, 1112 (E.D. Mich. 2011). Nevertheless, to the extent the witnesses testified about any out-of-court statements made by non-testifying declarants, Petitioner fails to show that the statements were testimonial. Because the witnesses' testimony regarding their personal observations and the

non-testimonial statements made by others did not implicate the Confrontation Clause, Petitioner's claim fails.

Additionally, to the extent that Petitioner challenges the state appellate court's conclusion that the testimony was not hearsay, his claim is not cognizable on habeas review. As discussed, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). A federal habeas court is bound by a state appellate court's ruling that certain testimony is not hearsay, because state law governs questions concerning the admissibility of evidence. *See Maynard v. Lockhart*, 981 F.2d 981, 986 (8th Cir. 1992). Any claim that the trial court improperly admitted this evidence as an exception to the hearsay rule is therefore non-cognizable in federal habeas review. *See, e.g.*, *Cathron v. Jones*, 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002) (holding petitioner's claim that state court erred in admitting hearsay under state evidence rule governing declarations against penal interest not cognizable in federal habeas review because the claim alleged a violation of state law instead of federal constitutional rights). Therefore, Petitioner is not entitled to relief on this claim.

### F. Prosecutorial Misconduct

Petitioner argues that the prosecutor improperly elicited expert testimony that XLR-11 was a controlled substance under MICH. COMP. LAWS § 333.7201(1)(e)(x) because it embraced an ultimate issue reserved for the jury and was unreliable opinion testimony. ECF No. 21 at PageID.272–76. Petitioner also argues that the prosecutor improperly stated in a newspaper that Petitioner was a "drug-dealer." *Id.* at PageID.275–76. The Michigan Court of Appeals rejected Petitioner's expert witness argument on direct review for plain error, concluding that the prosecutor's conduct was harmless error:

- 24 -

> Jamshid did not dispute at trial that XLR–11 was a controlled substance. Rather, his defense was that he did not know, and could not have known, that XLR–11 was a controlled substance. Assuming that the prosecutor committed misconduct by eliciting expert testimony that XLR–11 was a controlled substance, any error would be harmless. Jamshid has failed to demonstrate plain error affecting substantial rights.

*Zahraie*, 2015 WL 4169311, at *11.

The Michigan Court of Appeals' harmless-error ruling was not contrary to, or an unreasonable application of, clearly established federal law. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (cleaned up). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643–45 (1974). To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (cleaned up). Claims of prosecutorial misconduct also are subject to harmless-error analysis. *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir.2003) (citing *Hill v. Brigano*, 199 F.3d 833, 847 (6th Cir.1999)). An error is harmless unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The Court must examine "the fairness of the trial, not the culpability of the prosecutor." *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir.1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1994).

Petitioner has not shown that the prosecutor's conduct rendered the trial fundamentally unfair. The trial court ruled that Dr. Gregory W. Endres could offer expert testimony. ECF No. 31-

8 at PageID.2290. A prosecutor does not commit misconduct by introducing evidence that is admissible under state law. *See Dufresne v. Palmer*, 876 F.3d 248, 261 (6th Cir. 2017). In any event, a prosecutor "does not commit misconduct by asking questions that elicit inadmissible evidence." *Id*. (quoting *Key v. Rapelje*, 634 F. App'x 141, 148 (6th Cir. 2015)). Even if Dr. Endres' testimony invaded the jury's fact-finding provision, Petitioner has not cited any cases declaring that the introduction of such testimony rises to the level of a due process violation. A federal district court cannot grant habeas relief on the admission of an expert witness's testimony in the absence of Supreme Court precedent that shows that the admission of that expert witness's testimony on a particular subject violates the federal constitution. *See Wilson v. Parker*, 515 F.3d 682, 705–706 (6th Cir. 2008). Petitioner cites no Supreme Court cases establishing a due process violation on the particular subject to which Dr. Endres testified. In fact, "the Supreme Court has yet to hold that the federal constitution prohibits an expert from testifying even about an ultimate issue to be resolved by the trier of fact." *See Dicken v. Brewer*, No. 2:19-CV-11676, 2019 WL 6701434, at *7 (E.D. Mich. Dec. 9, 2019) (citing *Moses v. Payne*, 555 F.3d 742, 761 (9th Cir. 2009)). He also fails to cite a single Supreme Court case establishing a due process violation based on the admission of evidence in the form of unreliable expert testimony. Because Petitioner has not shown that the prosecutor's admission of Dr. Endres' testimony violated his due process rights, he is not entitled to habeas relief on this claim. And, to the extent Petitioner also argues that the prosecutor committed misconduct by calling him a drug dealer in a local newspaper, Petitioner did not raise this claim in the state courts, and this claim is speculative and unsupported by the state-court record. Petitioner is not entitled to habeas relief on this claim.

### G. Right to Present a Defense

Petitioner argues that the trial court violated his right to present a defense by denying his request to admit a laboratory report from one his vendors to show that he believed that the product he purchased was legal. ECF No. 21 at PageID.277–79. The Michigan Court of Appeals reviewed this claim for plain error affecting Petitioner's substantive rights, and determined that even though the trial court erred by denying the request on the basis of hearsay, the trial court did not violate his right to present a defense because defense counsel failed to comply with the Michigan Rules of Evidence:

> [D]efense counsel failed to comply with the evidentiary rules for presenting documentary evidence. The authentication or identification of evidence is a condition precedent to its admission, MRE 901(a), and when the admissibility of evidence is disputed, "the burden of establishing a proper foundation rests with the party seeking admission." *In re Brock*, 193 Mich. App 652, 669; 485 NW2d 110 (1992), rev'd on other grounds 442 Mich. 101 (1993). Evidence can be identified by the testimony of a witness with knowledge that the documents are what they are claimed to be, MRE 901(b)(1), or self-authenticated by an affidavit from the records custodian. MRE 902(11). Defense counsel did not call a witness to lay a foundation for admission of the laboratory report. Additionally, the court allowed Jamshid to testify that he read the laboratory report and that, on the basis of information contained in the report, he believed that the product he was selling was legal. Jamshid was not denied the opportunity to present a defense, and he has failed to establish plain error affecting substantial rights.

*Zahraie*, 2015 WL 4169311, at *11-12.

The Michigan Court of Appeals' ruling was not contrary to, or an unreasonable application of, clearly established federal law. First, to the extent that Petitioner asserts that the trial court erred in excluding the lab report, he does not state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The decision of the state courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's

interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The state court of appeals' determination that defense counsel failed to lay a proper foundation for the lab report under the Michigan Rules of Evidence is, therefore, axiomatically correct on habeas review.

Second, Petitioner has not shown that the court's ruling infringed on his constitutional right to present a defense. The Sixth and Fourteenth Amendments guarantee criminal defendants a meaningful opportunity to present evidence in support of a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 689–90 (1986). A criminal defendant, however, "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (internal alterations and quotation marks omitted). Rather, "the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Holmes v. South Carolina*, 547 U.S. 319, 326–27 (2006). Thus, evidentiary rules abridge the right to a meaningful opportunity to present a defense if such rules both "infring[e] upon a weighty interest of the accused" and are "arbitrary" or "disproportionate to the purposes they are designed to serve." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). When deciding if the exclusion of evidence impairs a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result. The question is whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).

Petitioner fails to show that the trial court's evidentiary ruling deprived him of a meaningful opportunity to present a complete defense. Although the court excluded the lab report, Petitioner testified that he read the lab report and relied on it when deciding whether to sell the

product. For instance, when defense counsel asked Petitioner if he believed that the "Super Nova" synthetic marijuana was legal, he testified, "Yes . . . [b]ased on the disclaimer that company gave." ECF No. 31-7 at PageID.2149. Petitioner also testified that he believed the product was legal "based on vendor information." *Id*. at PageID.2156. Defense counsel continued this line of questioning and Petitioner was fully permitted to explain his reasons for believing the product was legal. *Id*. at PageID.2155–60. The lab report itself would have only bolstered Petitioner's testimony, rather than add any new evidence for the jury to consider. For these reasons, the trial court's ruling did not render Petitioner's trial fundamentally unfair. Thus, Petitioner's claim is without merit.

### H. Ineffective Assistance of Trial Counsel

Petitioner argues that trial counsel was ineffective during various stages of his criminal case, and argues specifically that his counsel:

(1) lacked the necessary legal training to defend the case,
(2) failed to adequately investigate the facts of the case,
(3) failed to file certain pre-trial motions,
(4) failed to familiarize himself with the Michigan Rules of Evidence,
(5) failed to properly prepare for jury selection,
(6) failed to effectively cross-examine the prosecution's witnesses with impeachment evidence,
(7) failed to the limit the facts presented to the jury,
(8) failed to properly defend against the charges,
(9) failed to report the prosecutor's misconduct to the Attorney Grievance Commission,
(10) failed to prepare for sentencing and object to the scoring of offense variables 3, 9, 12, 14, and
(11) failed to object to the trial court's imposition of excessive fines

ECF No. 21 at PageID.293–306.

Petitioner first raised this claim in his motion for relief from judgment. The Tuscola County Circuit Court did not address this claim on the merits. Instead, the trial court concluded that Petitioner failed to establish cause for failing to raise the issue on direct appeal, or prejudice. *See*

ECF No. 31-15 at PageID.2830. Because the trial court resolved this issue on the ground of a procedural default, it did not adjudicate the ineffective assistance of counsel claim on the merits. Accordingly, this Court's review of the issue is *de novo.*

Claims of ineffective assistance of counsel are subject to the two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *See id*. at 687. To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id*. at 688–89. The "prejudice" component of a *Strickland* claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

First, Petitioner has not shown that trial counsel lacked the necessary legal training and preparedness for trial. He also does not show that counsel lacked knowledge of the Michigan Rules of Evidence, failed to effectively cross-examine witnesses, failed to prepare for jury selection, and failed to adequately defend against the charges. Indeed, the record belies these assertions. Throughout Petitioner's criminal case, trial counsel demonstrated thorough knowledge of the law and the facts. Counsel also raised numerous nonfrivolous objections and legal arguments, engaged extensively in jury selection, filed pretrial motions, moved for a directed verdict, and vigorously

cross-examined witnesses. For these reasons, Petitioner fails to show that counsel's conduct was constitutionally deficient on these bases.

Second, Petitioner has not demonstrated that trial counsel failed to investigate the case. Petitioner specifically challenges trial counsel's alleged failure to consult with and secure a chemistry or pharmacology expert to rebut Dr. Endres' testimony. However, Petitioner fails to show that counsel's strategy for not retaining an expert fell below an objective standard of reasonableness or would have changed the outcome of the case. Petitioner has not offered any evidence as to what the expert witness' testimony would have been and, therefore, cannot explain how an expert would have aided in his defense. A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006).

Third, Petitioner asserts that trial counsel failed to file certain pretrial motions. But Petitioner does not present any evidence showing that counsel had a proper basis to file any of the suggested motions nor does Petitioner discuss the likelihood that any suggested motion would be granted by the trial court. For these reasons, Petitioner's argument is purely conclusory and speculative.

Fourth, Petitioner contends that trial counsel should have reported the prosecution's alleged misconduct to the Attorney Grievance Commission. However, this argument does not address trial counsel's performance during trial and would not have affected the outcome of Petitioner's case. Because this argument is irrelevant to *Strickland's* inquiry, it lacks merit.

Finally, Petitioner argues that trial counsel failed to object to various offense variables and the trial court's imposition of fines during sentencing. A criminal defendant has the right to the effective assistance of counsel at sentencing in both noncapital and capital cases. *See Lafler v.*

*Cooper*, 566 U.S. 156, 165 (2012). Although sentencing does not involve a criminal defendant's guilt or innocence, "ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" *Id*. (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)). Petitioner fails to show that any of the requested objections at sentencing would have resulted in an alternative ruling. Trial counsel cannot be deemed ineffective for failing to make a futile or meritless objection or argument. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010). Moreover, the record reveals that trial counsel did successfully challenge the scoring of offense variable 19. ECF No. 31-10, PageID.2637–38. For these reasons, Petitioner is not entitled to habeas relief on this claim.

### I. Ineffective Assistance of Appellate Counsel

Petitioner contends that appellate counsel on his initial direct appeal provided ineffective assistance by failing to file motions for new trial and for remand in the state appellate courts and by failing to raise the foregoing issues and supplemental authority on direct appeal. ECF No. 21 at PageID.287–92. Petitioner raised this claim in his motion for relief from judgment. The trial court denied the claim on the basis that Petitioner failed to show that counsel's actions fell below the standard of reasonableness and that he was prejudiced by counsel's conduct. *See* ECF No. 31-15 at PageID.2831.

It is true that the Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985); *Halbert v. Michigan*, 545 U.S. 605, 609–10 (2005). But court appointed appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). A habeas court reviewing an ineffective-assistance-of-appellate-counsel claim must

defer twice: first to appellate counsel's decision not to raise an issue, and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 578 U.S. 113, 119 (2016) (per curiam).

Appellate counsel was not ineffective for failing to file motions for new trial and remand on Petitioner's direct appeal.[2] Petitioner fails to show that appellate counsel's refusal to file the requested motions on direct appeal was deficient or unreasonable. He also fails to demonstrate that filing the motions would have affected the outcome of his direct appeal. Further, appellate counsel did not perform deficiently by failing to raise certain issues on direct appeal or by failing to file additional supplemental authority to support his sufficiency of the evidence claim. As discussed herein, Petitioner has not shown that any of the claims that he wanted his appellate counsel to raise on direct review were meritorious. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Therefore, appellate counsel was not ineffective and Petitioner is not entitled to habeas relief on this claim.

### J. Preemptory Challenges (*Batson*)

Petitioner argues that the prosecutor deprived him of his right to equal protection by using peremptory challenges to remove a Black and a Hispanic juror from the jury solely on the basis of race. ECF No. 21-1 at PageID.325–27. Petitioner raised this claim in his motion for relief from judgment. Because the state court resolved this issue on the ground of a procedural default, the

---

[2] The Court notes that substitute appellate counsel filed a motion for remand for an evidentiary hearing regarding Petitioner's conviction under Mich. Comp. Laws § 333.7212(1)(e)(x) in Petitioner's second appeal to the Michigan Court of Appeals after the *Lockridge* remand. ECF No. 31-19 at PageID.3162. The Michigan Court of Appeals denied the motion. *Id*. at PageID.3161.

state court did not adjudicate the *Batson* claim on the merits. Accordingly, this Court's review of the *Batson* issue is *de novo*.

Although a criminal defendant has no right to have a member of a particular race on the jury, he or she does have the right to be tried by a jury whose members are selected by non-discriminatory criteria. *See Powers v. Ohio*, 499 U.S. 400, 404 (1991); *Taylor v. Louisiana*, 419 U.S. 522, 527–28 (1975). The Supreme Court "consistently and repeatedly has reaffirmed that racial discrimination by the State in jury selection offends the Equal Protection Clause." *Georgia v. McCollum*, 505 U.S. 42, 44 (1992). Consequently, a prosecutor is prohibited from challenging potential jurors solely on account of their race. *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986); *Lancaster v. Adams*, 324 F.3d 423, 432-33 (6th Cir. 2003); *see also Rivera v. Illinois*, 556 U.S. 148, 152 (2009). To be sure, the "Constitution forbids striking even a single prospective juror for a discriminatory purpose." *Foster v. Chatman*, 578 U.S. 488, 499 (2016)

To establish a prima facie case of purposeful discrimination in the selection of a jury based upon the prosecutor's exercise of peremptory challenges, a defendant must show that he or she is a member of a cognizable racial group and that the prosecutor used peremptory challenges to remove members of the defendant's race from the jury. The defendant must also show that other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors on account of their race. Relevant circumstances include the pattern of strikes and the prosecutor's questions and statements. *Batson*, 476 U.S. at 96-97.

Once the defendant makes a prima facie showing, the burden shifts to the prosecutor to offer a "race neutral explanation" for challenging the jurors. *Id*. at 97. A "race neutral" explanation is one based upon something other than the juror's race. The issue is the facial validity of the prosecutor's explanation. "Unless a discriminatory intent is inherent in the prosecutor's

- 34 -

explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U.S. 352, 360 (1991); *see also Rice v. Collins*, 546 U.S. 333, 338 (2006).

If a race-neutral explanation is offered, the court must then determine whether the defendant carried the burden to prove purposeful discrimination. *Batson*, 476 U.S. at 98. The ultimate question of discriminatory intent concerns an evaluation of the prosecutor's credibility. Such a decision represents a factual finding accorded great deference on appeal, which will not be overturned unless clearly erroneous. *See Miller-El v. Cockrell*, 537 U.S. 322, 339–40 (2003). The defendant bears the final burden of proving purposeful discrimination. *Batson*, 476 U.S. at 98.

In this case, Petitioner concedes that he cannot make a prima facie showing of purposeful discrimination based on the state-court record and requests an evidentiary hearing to further develop his claim. He contends that the jury questionnaire forms and jury list will show purposeful discrimination. However, Petitioner fails to explain how the proposed discovery would raise even the slightest inference that the prosecutor used the peremptory challenges to exclude the two jurors because of their race. On the contrary, the state-court record shows that one of the two jurors expressed that a prior experience may cause him to be biased in the case, which certainly suggests a race neutral basis for preemptively striking the juror. ECF No. 31-5 at PageID.1439. For these reasons, the Court concludes that Petitioner's claim is speculative. A habeas petitioner is not entitled to habeas relief on a right to present a defense claim that is merely speculative. *See, e.g.*, *Berry v. Palmer*, 518 F. App'x. 336, 342 (6th Cir. 2013). Petitioner is not entitled to habeas relief on this claim.

### K. Fourth Amendment

Petitioner argues that his Fourth Amendment rights were violated when police officers searched his party store and his apartment and seized items without a warrant. ECF Nos. 21 at

PageID.307–18; 21-1 at PageID.319–24. This claim will not be addressed on the merits, because Petitioner cannot overcome the hurled imposed by *Stone v. Powell*, in which the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494–95 (1976).

The Sixth Circuit Court of Appeals employs a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quotation marks omitted). The relevant inquiry is whether the petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico*, 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grounds* 606 F.3d 867 (6th Cir. 2010).

Michigan provides ample opportunity to litigate Fourth Amendment claims. Typically, such claims are addressed by pre-trial motions to suppress. *See People v. Ferguson*, 376 Mich. 90, 93-94, 135 N.W.2d 357, 358–59 (1965) (holding motions to suppress must be brought timely where the factual circumstances constituting the illegal arrest or seizure are known to the defendant before trial). Petitioner makes no allegations that presentation of his Fourth Amendment claim was frustrated by a failure of the state court procedures for presentation of that claim. This claim is therefore without merit.

### L. Sentencing

Petitioner argues that he is entitled to re-sentencing because: (1) the trial court incorrectly scored offense variables, (2) his fines were unconstitutionally excessive, and (3) his sentence was based on unconstitutional judicial factfinding. None of Petitioner's arguments entitle him to relief. ECF No. 21-1 at PageID.328–35.

First, Petitioner's argument that the state trial court incorrectly scored his offense variables 3, 9, 12, and 14 under the Michigan Sentencing Guidelines is not cognizable on federal habeas review, because it is essentially a state law claim. *See Tironi v. Birkett*, 252 F. App'x. 724, 725 (6th Cir. 2007); *Howard v. White*, 76 F. App'x. 52, 53 (6th Cir. 2003). Errors in the application of state sentencing guidelines may not independently support habeas relief. *See Kissner v. Palmer*, 826 F. 3d 898, 904 (6th Cir. 2016). Petitioner had "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009).

Second, to the extent Petitioner argues that the trial court imposed excessive fines in violation of the Eighth Amendment, this claim is also not cognizable. Where a habeas petitioner is not claiming the right to be released, but is challenging the imposition of a fine or other costs, he or she may not bring a petition for writ of habeas corpus. *See United States v. Watroba*, 56 F. 3d 28, 29 (6th Cir. 1995); *see also U.S. v. Mays*, 67 Fed. App'x. 868, 869 (6th Cir. 2003) (holding district court lacked subject matter jurisdiction over defendant's § 2255 post-judgment motion to reduce or rescind fine levied in criminal judgment because defendant was not in custody, as required in a motion to vacate sentence or a petition for a writ of habeas corpus).

Third, Petitioner claims that the trial judge violated his Sixth Amendment right to a trial by jury throughout sentencing by using factors that had not been proven beyond a reasonable doubt

or admitted to when scoring offense variables. Respondent argues this claim is moot and does not warrant additional relief.

Petitioner raised this argument in his application for leave to appeal before the Michigan Supreme Court. *See* ECF No. 31-27. The Michigan Supreme Court remanded the issue to the trial court to determine whether it would have imposed a materially different sentence under the sentencing procedure described in *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (Mich. 2015). *See Zahraie*, 875 N.W.2d at 212. On remand, the trial court ruled that it would have imposed the same sentence and affirmed Petitioner's original sentence. *See* ECF No. 31-11, PageID.2670. Following the remand, the Michigan Court of Appeals affirmed his sentence. *Zahraie*, 2018 WL 842913, at *1, 3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. On June 17, 2013, the United States Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt. *See Alleyne v. United States*, 570 U.S. 99, 103 (2013). *Alleyne* expands the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), in which the U.S. Supreme Court held that any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. In reaching this conclusion, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), which held that only factors that increase the maximum, as opposed to the minimum, sentence must be proven beyond a reasonable doubt to a factfinder. *Alleyne*, 570 U.S. at 106-07. The Supreme Court, however,

indicated that the ruling in *Alleyne* did not mean that every fact influencing judicial discretion in sentencing must be proven to a jury beyond a reasonable doubt. *Id*. at 116.

Two years later, the Michigan Supreme Court relied on *Alleyne* in finding that Michigan's mandatory sentencing guidelines scheme violated the Sixth Amendment right to a jury trial. *See Lockridge*, 498 Mich. at 373-74. The Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violated the Sixth Amendment, because the "guidelines require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables that mandatorily increase the floor of the guidelines minimum sentence range, i.e., the 'mandatory minimum' sentence under *Alleyne*." *Lockridge*, 498 Mich. at 364. The Michigan Supreme Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only. *Id*. at 391–92 (relying on *Booker*, 543 U.S. at 264–65 (holding the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to reasonableness review)).

After correcting the unconstitutional sentencing guidelines, the *Lockridge* court decided the proper remedy for defendants who had been sentenced under the unconstitutional sentencing guidelines was to "remand[ ] to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error." *Id*. at 398. Known as a *Crosby* hearing, the trial court conducts a new sentencing hearing only if it finds that it would have imposed a materially different sentence had the guidelines been advisory and not mandatory. *Id*.

In this case, even if Petitioner's initial sentence violated the Sixth Amendment, he is still not entitled to habeas relief. As the record shows, Petitioner was afforded a *Crosby* hearing and

the state trial court ruled that it would not impose a different sentence. *See* ECF No. 31-11. The Sixth Circuit has found that this process employed by the state courts to remedy any Sixth Amendment violations is sufficient and is not a basis for granting habeas relief. *See Morrell v. Wardens*, 12 F.4th 626, 632-33 (6th Cir. 2021) (noting the state could remand such matters for full re-sentencing hearings, but is not required to as *Crosby* hearings do not violate clearly established federal law); *see also McLilly v. Nagy*, 2023 WL 21145 at *6 (6th Cir., Jan. 3, 2023) ("We need not 'ask the sentencing court if it would change its mind' when it has already made clear that it would not.") Because Petitioner had received a *Crosby* hearing, and the Court need not afford Petitioner any further relief, this claim is rejected as moot.

## M. Judicial Bias

Finally, Petitioner argues that he was denied a fair trial because of judicial bias. Specifically, he argues that the trial judge (1) had a personal financial interest in the outcome of the case, (2) showed favoritism toward the prosecution in evidentiary rulings, and (3) repeatedly admonished and criticized defense counsel in front of the jury. *See* ECF No. 29 at PageID.848–63.

Petitioner first raised his judicial bias claim in a motion to disqualify the trial judge from adjudicating his post-conviction proceedings. *See* ECF No. 31-25 at PageID.4022. The trial court denied the motion, *Id*. at PageID.4031, and Petitioner moved to have the matter reviewed by the State Court Administrative Office. A second hearing was held before the Huron County Circuit Court. ECF No. 31-25 at PageID.4034. During the hearing, Petitioner raised several arguments, including that the trial judge showed bias by (1) denying Petitioner's change of venue request because she had a financial interest in the case, *id*. at PageID.4050; (2) allowing the prosecution's evidence and denying admission of Petitioner's evidence, *id*. at PageID.4038; and (3) belittling and criticizing defense counsel such that the jury could infer prejudice against Petitioner. *Id*. at

PageID.4039-41. The trial court denied Petitioner's motion on the basis that he failed to satisfy his burden under the Michigan Court Rules. *Id*. at PageID.4057. Petitioner filed an application for leave in the Michigan Court of Appeals and a motion for remand, which the Michigan Court of Appeals denied. ECF No. 31-22 at PageID.3432. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, which was also denied. ECF No. 31-25 at PageID.3999.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Fourteenth Amendment Due Process Clause requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997). Judicial misconduct claims involve two types of cases. One group addresses charges of "judicial bias" stemming from a trial judge's "personal interest" in the outcome of a case, usually derived from some extrajudicial association with the cause or one of the parties. *In re Murchison*, 349 U.S. 133, 136 (1955). The second group concerns charges of "judicial misconduct" in which the trial judge is accused of conducting the proceedings in a manner that exhibits a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002). Adverse rulings themselves are generally insufficient to establish bias or prejudice. *Liteky*, 510 U.S. at 555 ("[J]udicial rulings alone almost never constitute valid basis for a bias or partiality recusal motion."); *United States v. Hynes*, 467 F.3d 951, 960 (6th Cir. 2006). A constitutional violation occurs only when a judge's rulings or statements show "a predisposition so extreme as to display clear inability to render fair judgment." *Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008) (punctuation modified).

In reviewing a judicial bias claim, a federal habeas court should presume that the judge properly discharged his or her official duties. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Coley v.*

*Bagley*, 706 F.3d 741, 751 (6th Cir. 2013); *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004). The pertinent question on habeas review is not whether the judge's questions or comments might constitute reversible error if the conviction was being reviewed on direct review but whether the state appellate court's rejection of the judicial misconduct claim was a reasonable or unreasonable application of clearly established federal law. *See, e.g.*, *Allen v. Hawley*, 74 F. App'x 457, 460-61 (6th Cir. 2003).

Here, Petitioner's arguments implicate both types of judicial misconduct cases, but none have merit. First, Petitioner fails to show that the trial judge had a personal financial interest in the case such that his constitutional rights were violated. In support of his argument, Petitioner claims that defense counsel told him that the trial judge refused to grant his request to change venue because she had a financial interest in the case. He also claims that the trial judge had a personal interest in using his $114,000 criminal fine to fund a local library. Petitioner's arguments are conclusory and speculative. He provides no evidentiary support for these claims as shown by his request for an evidentiary hearing to factually develop this issue. Therefore, such allegations are insufficient to overcome the presumptions of judicial impartiality and the judge's proper discharge of her duties.

Second, Petitioner fails to show that the trial judge was biased through her evidentiary rulings. As stated, adverse rulings alone are insufficient to establish bias or prejudice. *Liteky*, 510 U.S. at 555. Although Petitioner disagrees with many of the trial court's rulings, he has not shown that the court showed any degree of favoritism for the prosecution or antagonism for the defense. Rather, the trial transcript shows that the trial court ruled carefully on objections. And even if some of the trial court's evidentiary rulings were incorrect, that alone would not establish judicial bias

against Petitioner, s*ee United States v. Gallagher*, 576 F.2d 1028, 1039 (3rd Cir. 1978), and any error would be harmless given the overwhelming evidence supporting his convictions.

Third, Petitioner fails to show that the trial court's comments to defense counsel showed bias. Petitioner argues that the trial judge belittled defense counsel before the jury and made several disparaging remarks. The Supreme Court has ruled that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias or misconduct. *Liteky*, 510 U.S. 540 at 555–56. "A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune." *Id*. The record reveals that at certain points during trial the court expressed impatience toward defense counsel with respect to his evidentiary objections, cross-examination, and evidentiary requests. The judge's comments speak to her efforts to control courtroom administration and trial efficiency, and do not exhibit prejudice or bias against Petitioner. For these reasons, Petitioner is not entitled to habeas relief on this claim.

## IV.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation and quoting citation omitted).

In this case, reasonable jurists would not debate this Court's conclusion that Petitioner is not entitled to habeas relief. Therefore, a certificate of appealability will be denied. Petitioner will

also be denied leave to appeal *in forma pauperis* because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

**V.**

Accordingly, it is **ORDERED** that the Petition for a Writ of Habeas Corpus, ECF No. 21, is **DISMISSED WITH PREJUDICE**.

Further, it is **ORDERED** that a certificate of appealability is **DENIED**.

Further, it is **ORDERED** that leave to appeal *in forma pauperis* is **DENIED**.

**This is a final order and closes the above-captioned case.**

Dated: March 28, 2024                              s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge