UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMSHID ZAHRAIE,

                Petitioner,                Case No. 1:17-cv-13131

v.

                                        Honorable Thomas L. Ludington
CHANDLER CHEEKS,                      United States District Judge

                Respondent.             Honorable David R. Grand
                                              United States Magistrate Judge
_____/

**OPINION AND ORDER DENYING (1) PETITIONER'S MOTION TO ALTER OR AMEND, (2) MOTION FOR CERTIFICATE OF APPEALABILITY, (3) MOTION TO PROCEED IN FORMA PAUPERIS ON APPEAL, AND (4) MOTION TO AMEND MOTION**

After a Tuscola County jury found Petitioner Jamshid Zahraie guilty of six counts of racketeering and drug charges, he was sentenced to 15 to 40 years of imprisonment. In February 2021, Petitioner filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, raising fourteen claims that challenged his convictions. On March 28, 2024, the Petition was denied because his claims lacked merit, and Petitioner was denied a certificate of appealability and leave to appeal *in forma pauperis*.

Shortly after, Petitioner filed a motion seeking to amend or correct the judgment. Petitioner then filed two additional motions, again seeking a certificate of appealability and leave to appeal *in forma pauperis*. Then—almost a year after filing his Motion to Amend or Correct the Judgment—Petitioner filed a motion to amend his Motion to Amend or Correct the Judgement. As explained below, Petitioner's motions will be denied.

**I.**

In May 2014, a Tuscola County jury convicted Petitioner Jamshid Zahraie of several offenses: (1) conducting an enterprise through a pattern of racketeering activity, MICH. COMP.

Laws § 750.159i(1); (2) unlawful possession of a controlled substance with intent to deliver, Mich. Comp. Laws §§ 333.7272(1)(e) and 333.7401(2)(b)(ii); (3) unlawful manufacture of a controlled substance, *id.*; (4) unlawful delivery of a controlled substance, *id.*; (5) unlawful possession of a controlled substance, *id.*; and (6) maintaining a drug house, Mich. Comp. Laws §§ 333.7405(1)(d) and 333.7406. ECF No. 21 at PageID.231. The trial court sentenced Petitioner to 15 to 40 years of imprisonment for the racketeering conviction and to lesser concurrent terms for the remaining convictions. *Id.*

Petitioner's convictions arose from selling synthetic marijuana from his party store and gas station and manufacturing materials for synthetic marijuana from his apartment.[1] *See generally People v. Zahraie*, No. 321835, 2015 WL 4169311 (Mich. Ct. App. July 9, 2015). The following facts from the Michigan Court of Appeals are presumed correct on habeas review, *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir.2009):

> On June 30, 2012, Michigan State Police (MSP) troopers in Tuscola County participated in an MSP initiative to advise store owners that K2 and other types of synthetic marijuana would be illegal as of July 1, 2012. Trooper Nathan Hopp advised Jamshid, the owner of Gran's Party Mart and the Clark gas station in Caro, and his ex-wife, Kirsta, who was working at Gran's on that day, of the impending change in the law. Of the thirty-eight stores visited that day in Tuscola County as part of the initiative, troopers observed synthetic marijuana only at Gran's and the Clark station.
>
> Lapeer police detective A.J. Wetzel, a member of the TNU, participated in a controlled purchase of suspected synthetic marijuana at Gran's on July 20, 2012, after receiving several tips that synthetic marijuana was being sold at the store. Jamshid told Wetzel that he was sold out of a brand of synthetic marijuana known as "Spice," but showed Wetzel the different types of synthetic marijuana that he had. Wetzel purchased one packet of "Skunk" for $20 and one packet of "Sativa" for $15. Jamshid indicated that these brands were not as good as Spice, but were smokable. Wetzel made a second controlled purchase of suspected synthetic marijuana at Gran's on August 22, 2012. Kirsta told Wetzel that a brand called "Sachet" was not available and that they only had what was under the counter.

---

[1] Petitioner was tried jointly with codefendant Kirsta Zahraie. The Michigan Court of Appeals consolidated the appeals.

- 2 -

Wetzel purchased one packet of "Blue Jay" from Kirsta for $15 or $20. When Wetzel asked Kirsta if Blue Jay would get him high, Kirsta said that "everyone was buying it so it must be okay."

Both Jamshid and Kirsta were present at Gran's during an administrative tobacco inspection led by MSP trooper Michael Leddy on January 17, 2013. Trooper Leddy observed brands of synthetic marijuana known as K3, Super Nova, and Diesel in a glass display in an area containing smoking apparatuses, glass pipes, and rolling papers. A large amount of several brands of synthetic marijuana was also found in boxes in three separate unlocked basement rooms. Jamshid stated that he had removed the illegal products from the shelves and put it in the basement and that he did not know that the products in the glass case were illegal. MSP Trooper Andrew Feehan testified that he informed Jamshid on this date that he could not sell synthetic marijuana. A total of 40 pounds of suspected synthetic marijuana was seized and a sample of each brand was sent to the crime laboratory for analysis. According to Leddy, no field test for synthetic marijuana is available. The laboratory report indicated that substances known as AM–2201, XLR–11, UR–144, and EAM–2201 were found in the tested samples. The report indicated that AM–2201 is a schedule 1 controlled substance in Michigan, and that XLR–11 was not presently a listed controlled substance under Michigan or federal law.

Kirsta was present at Gran's during a second administrative tobacco inspection led by MSP detective-sergeant Michael Foley on March 27, 2013. According to Foley, Kirsta was uncooperative and refused to provide identification. During the inspection, Foley observed several packets of suspected synthetic marijuana under a glass counter, in a grocery bag that Kirsta had attempted to hide, and in the basement. Approximately 1,400 packets of suspected synthetic marijuana were seized from Gran's that day. XLR–11 was detected in five of the sample packets that were analyzed by the crime laboratory.

Detective Jason Miner participated in a controlled purchase of suspected synthetic marijuana at Gran's on April 25, 2013. In response to Miner's request for Spice, Kirsta said that they had an all-natural product called Super Nova. Miner purchased one packet of Super Nova from Kirsta for $15. A laboratory analysis indicated that the sample contained XLR–11. Trooper Feehan testified that he told Jamshid and Kirsta that they could not sell products containing XLR–11.

On April 29, 2013, Jerry Donley made a controlled purchase of suspected synthetic marijuana at the Clark station. Donley told Kirsta that he wanted to purchase Spice, and she told him that Spice was no longer available but that other smokable products similar to Spice were available. Donley purchased one package each of two different brands for $25, and Kirsta provided free rolling papers. Laboratory analysis of the product detected the presence of XLR–11.

On May 2, 2013, members of the TNU executed search warrants at the Clark station, at Gran's, and at the apartment that Jamshid and Kirsta shared. 585 packets

- 3 -

of Super Nova marked "Not for human consumption" and $114,024 in cash were seized from the Clark station. Troopers also found an invoice for the purchase of $3,100 worth of Super Nova from a company called Clear Smoke. During the search at Gran's, approximately 50 packets of K3 and Super Nova were found in a glass case and under the front counter, and several thousand empty silver packets were found in the basement. The empty packets were the same as the filled packets but did not contain a label or substance. A laboratory analysis of the Super Nova sample detected XLR–11.

During the search of the apartment, troopers found a total of 2,223 packets of suspected synthetic marijuana, including 1,300 packets of Super Nova packaged in 1.5 gram, 3.5 gram, and 6 gram packets. Several pounds of plant material, flavorings, foil packets, acetone, scales, measuring cups, syringes, trays, labels, grinding utensils, and a recipe for synthetic marijuana using the controlled substance JWH–018. According to MSP Lieutenant Doug Rogers, an expert on possession with intent to deliver narcotics, the items seized suggested that synthetic marijuana was being manufactured for distribution. Laboratory analysis of the samples seized from the apartment showed that JWH–018 was found on loose plant material in Ziploc baggies that were found in the pantry. Another baggie containing loose plant material and a flavoring bottle contained XLR–11. A packet of a brand of synthetic marijuana called "Scooby Snax" that was found in the pantry contained the controlled substance AM–2201. The Super Nova packets found in the pantry showed the presence of XLR-11. Bulk bags in the pantry that were labeled "Stratosphere" contained controlled substances JWH–250, JWH–018, and AM–2201. A packet labeled "Magnolia Rush II Max" that was found in the pantry contained XLR–11.

Dr. Gregory Endres, an expert in organic chemistry in the identification, classification, manufacture, and pharmacological effects of synthetic marijuana, opined XLR–11 is a schedule 1 controlled substance under the controlled substances act as amended on July 1, 2012.

Jamshid acknowledged that troopers told him on June 30, 2012, that all synthetic marijuana was becoming illegal. Jamshid believed that the Super Nova he purchased from Clear Smoke was legal based on a disclaimer that he read on the internet and a laboratory report from the vendor. He admitted that he made K3 using a base leaf of damiana leaf and lavender bud to which he added flavoring, and that he continued to sell K3 because he believed it was legal. Jamshid admitted that he had a recipe for making synthetic marijuana that contained JWH–018, but he denied making any products using the recipe. Jamshid testified that some of his customers smoke K3 and some use it for aromatherapy; approximately 15 to 20 percent of his gross sales are from the sale of Super Nova and K3. Jamshid testified that the synthetic marijuana the troopers found in the basement at Gran's was the product that he had removed from the store shelves because it contained chemicals and was illegal. He explained that the large amount of cash seized from the gas station came from a settlement with his former employer in 2001 and from real estate

transactions. Jamshid testified that Kirsta is not his employee, that they are divorced, and that she rents a room from him for so that she can assist with the care of their children. He testified that Kirsta does not work at his stores and that she merely covers for him for a half-hour or an hour when he has errands to run.

Kirsta testified that she was divorced from Jamshid and that she moved in with him in 2009 because he needed help with their children. She stated that she had her own bedroom in the apartment and that she paid $250 in monthly rent. Kirsta testified that she is not Jamshid's employee, that she receives no pay, that she does not own any businesses, and that she does not assist with the business records or accounting at Gran's or the Clark gas station. She admitted that she assisted Jamshid at his stores two days a week. Kirsta testified that she did not know that the products she was selling contained a controlled substance and that she relied on Jamshid's statements that the substances they were selling were legal. Kirsta denied ever seeing Jamshid make synthetic marijuana or sell it from their apartment. She also denied knowledge of the items in the pantry, with the exception of cleaning items and acetone for her fingernails.

*See People v. Zahraie*, No. 321835, 2015 WL 4169311, at *1–4 (Mich. Ct. App. July 9, 2015).

The trial court sentenced Petitioner to 15 to 40 years of imprisonment for the racketeering conviction and to lesser concurrent terms for the other convictions. *See id.* at *1. Appealing as of right, Petitioner argued that:

> (1) the catchall language of MICH. COMP. LAWS § 333.7201(1)(e)(x) is unconstitutionally vague;
> (2) the evidence was insufficient to sustain his conviction for conducting a criminal enterprise;
> (3) the trial court erred by admitting evidence of prior purchases of synthetic marijuana from Petitioner's stores;
> (4) he was denied due process of law because no hearing was held to determine the existence of his prior convictions;
> (5) his right of confrontation was violated by the admission of hearsay testimony;
> (6) the prosecutor committed misconduct by eliciting testimony from an expert witness that XLR-11 is a Schedule I controlled substance; and
> (7) the trial court's refusal to admit a laboratory report denied him the right to present a defense.

*See generally Zahraie*, 2015 WL 4169311.

The Michigan Court of Appeals rejected Petitioner's arguments and affirmed his convictions. *See Zahraie*, 2015 WL 4169311, at *12. Petitioner then applied for leave to appeal to

the Michigan Supreme Court. *See People v. Zahraie*, 875 N.W.2d 212 (Mich. 2016). The Michigan Supreme Court remanded Petitioner's case to the trial court to determine whether the trial court would have imposed a materially different sentence under the sentencing procedure described in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). *See id*. But the Michigan Supreme Court denied leave to appeal in all other respects. *See id*. On June 28, 2016, the Michigan Supreme Court denied reconsideration. *People v. Zahraie*, 880 N.W.2d 569 (Mich. 2016). And on October 3, 2016, the United States Supreme Court denied certiorari. *See Zahraie v. Michigan*, 137 S. Ct. 115 (2016).

Meanwhile, in August 2016, the trial court held a resentencing hearing, as directed by the Michigan Supreme Court, and affirmed its initial sentence in an oral decision. *See* ECF No. 49 at PageID.5549. Petitioner appealed the trial court's ruling, but the Michigan Court of Appeals dismissed his claim of appeal for lack of jurisdiction because the trial court had not entered a final judgment or order after its resentencing hearing. *See People v. Zahraie*, No. 334853 (Mich. Ct. App. Oct. 12, 2016).

On November 29, 2016, the trial court issued a final order declining to resentence Petitioner but granting him a new claim of appeal and appointing him appellate counsel. *See* ECF No. 49 at PageID.5549. On March 20, 2017, as the sentencing decision progressed through the state courts, Petitioner filed his first federal habeas corpus petition and a motion to stay the case pending exhaustion of state remedies. *See Zahraie v. McCullik*, No. 1:17-cv-10875, ECF No. 4 (E.D. Mich. Mar. 30, 2107). Petitioner raised fourteen claims:

(1) he was convicted under an unconstitutionally vague statute;
(2) he was charged under an "inapplicable" statute;
(3) he was denied the effective assistance of appellate counsel;
(4) he was denied the effective assistance of trial counsel;
(5) there was outrageous governmental conduct during the investigation;
(6) he was subjected to illegal searches and seizures;
(7) he was denied the right to present a complete defense;
(8) insufficient evidence was presented at trial to sustain his convictions;

>(9) the government exercised racially motivated peremptory strikes of jurors;
>(10) the trial court erroneously admitted certain evidence at trial;
>(11) the jury instructions were erroneous;
>(12) the trial judge was biased against him and committed misconduct;
>(13) the cumulative effect of the errors rendered his trial unfair; and
>(14) he was entitled to re-sentencing

See generally id.

The petition was summarily dismissed without prejudice, and the motion to stay was denied as unnecessary because Petitioner was still exhausting state remedies and was not in danger of running afoul of the habeas statute of limitations Id.

On September 22, 2017, Petitioner filed another petition for a writ of habeas corpus, ECF No. 1, an application to proceed without prepaying fees or costs, ECF No. 2, and a motion to stay the federal proceeding until he could file a post-conviction motion in state court, ECF No. 3. Petitioner's second habeas petition raised the same fourteen claims as his first. On November 16, 2017, Petitioner's motion to stay was denied, his Petition was summarily dismissed without prejudice, and his case was closed. ECF No. 9.

On February 13, 2018, the Michigan Court of Appeals affirmed Petitioner's sentences in an unpublished opinion. *People v. Zahraie*, No. 336023, 2018 WL 842913, at *1, 3 (Mich. Ct. App. Feb. 13, 2018). Petitioner subsequently filed for leave to appeal in the Michigan Supreme Court, raising three new claims concerning the effectiveness of trial and appellate counsel. *See People v. Zahraie*, 913 N.W.2d 294 (Mich. 2018). The Michigan Supreme Court denied leave because it was not persuaded that the Court should review the questions presented. *Id.*

On August 13, 2018, Petitioner returned to the trial court and filed a motion for relief from judgment, raising the following claims:

>(1) (1) he was charged under an "inapplicable" statute;
>(2) he was convicted under an unconstitutionally vague statute and deprived of fair notice;

>      (3) appellate counsel provided ineffective assistance;
>      (4) trial counsel provided ineffective assistance;
>      (5) he was deprived of search and seizure rights under the Fourth Amendment;
>      (6) the government exercised racially motivated peremptory strikes of jurors; and
>      (7) he was entitled to re-sentencing.

ECF No. 31-12. Petitioner also filed a motion to disqualify the trial court judge from deciding his motion for reconsideration, which was ultimately denied. ECF No. 31-25, PageID.4022. The trial court denied the motion for relief from judgment, ruling that Michigan Court Rule 6.508(D)(2) barred Petitioner's first two claims, that his ineffective-assistance-of-appellate-counsel claim was meritless, and Michigan Court Rule 6.508(D)(3) barred his remaining claims. ECF No. 31-15. The trial court further denied Petitioner's motion for reconsideration. *Id.*

Petitioner filed for leave to appeal in the Michigan Court of Appeals, but the court denied leave because Petitioner "failed to establish that the trial court erred in denying the motion for relief from judgment." ECF No. 31-23, PageID.3534. Petitioner applied for leave to appeal in the Michigan Supreme Court but was denied relief under Mich. Ct. Rule 6.508(D). *People v. Zahraie*, 944 N.W.2d 695 (Mich. 2020). The Michigan Supreme Court further denied Petitioner's motion for reconsideration. *People v. Zahraie*, 948 N.W.2d 561 (Mich. 2020).

On July 27, 2020, Petitioner filed a motion to reopen this case. ECF No. 18. His motion was granted, and Petitioner was directed to file an amended petition. ECF No. 19. On February 9, 2021, Petitioner filed his amended petition, raising 13 claims. ECF No. 21. On May 28, 2021, Petitioner moved to supplement his petition with two new claims. ECF No. 29. The motion was partially granted, and Petitioner was allowed to add a judicial bias claim. *See* ECF No. 35 at PageID.5222–23. Ultimately, Petitioner asserted the following grounds for habeas relief:

>      I. Petitioner was convicted on insufficient evidence of a criminal enterprise and a lack of evidence that the substance was a controlled substance within the meaning of the statute.

II. The state court erred when admitting alleged prior bad acts when the evidence was not relevant or material, not for a proper purpose, and/or substantially outweighed by unfair prejudice.

III. The Michigan Court of Appeals abused its discretion where it denied petitioner's Sixth Amendment right to a trial by jury, when the Michigan Court of Appeals affirmed his conviction on controlled substances that the jury did not consider as an element of the offense during the trial. Petitioner cannot be convicted of the crime because the prohibited "drug" is unconstitutional as a result of being vague and overbroad.

IV. The right of confrontation was violated by the admission of hearsay testimony of Blaine McGowen and Tamara Mathys, when they testified to the ill effects that "spice" had on others, in violation of the Sixth and Fourteenth Amendments.

V. The prosecutor committed misconduct by eliciting testimony from an expert in violation of Michigan Rule of Evidence 702, and Federal Rule of Evidence 702, without conducting a *Daubert* hearing.

VI. The state court violated Petitioner's right to present a defense.

VII. Petitioner was deprived of his constitutional right to have substantive and procedural process under the Due Process Clause of the Fourteenth Amendment when the Tuscola County Prosecutor charged him with violating Michigan's controlled substances law under an inapplicable statute.

VIII. Petitioner was deprived of his constitutional right to have fair notice under the Due Process Clause of the Fourteenth Amendment where MICH. COMP. LAWS § 333.7212(1)(e)(x)—the "catchall" clause—is void for vagueness.

IX. Petitioner was deprived of his Sixth Amendment right to effective assistance of appellate counsel.

X. Petitioner was deprived of his Sixth Amendment right to effective assistance of trial counsel.

XI. Petitioner was deprived of his constitutional right under the Fourth Amendment's limitation on unreasonable search and seizure.

XII. Petitioner was deprived of his constitutional rights under the Sixth and Fourteenth Amendment because the government exercised racially motivated peremptory strikes of jurors.

XIII. Petitioner is entitled to re-sentencing.

XIV. Petitioner's due process rights were violated as a result of judicial bias.

ECF Nos. 21 at PageID.225–26; 29 at PageID.824.

On March 28, 2024, the Petition was denied because Petitioner's claims lacked merit, and he was denied a certificate of appealability or leave to appeal *in forma pauperis*. ECF No. 49. On May 7, 2024, Petitioner filed a motion to alter or amend the judgment, challenging this Court's decision regarding eight of his fourteen claims.[2] ECF No. 51. Petitioner also seeks a certificate of appealability and leave to proceed on appeal *in forma pauperis*. ECF Nos. 52; 53. Finally, on February 28, 2024, Petitioner filed a Civil Rule 15(a)(2) motion to amend his Motion to Alter or Amend the Judgment. *See* ECF No. 55.

## II.

Start with Petitioner's Motion seeking to alter or amend his judgment and subsequent Motion seeking to amend his Motion. ECF No. 51; 55. Decisions to alter or amend judgments under Civil Rule 59(e) are within the district court's discretion. *Davis v. Jellico Cmty. Hosp., Inc.*, 912 F.2d 129, 132 (6th Cir. 1990). A motion to alter or amend judgment will only be granted if there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010). But these motions may not be used to raise "new arguments or evidence that the moving party could have raised before the decision issued." *Banister v. Davis*, 590 U.S. 504, 508 (2020). And a motion to alter or amend judgment is not a substitute for an appeal. *Johnson v. Henderson*, 229 F. Supp. 2d 793, 796 (N.D. Ohio 2002).

---

[2] Petitioner titles his motion as a "Motion for Reconsideration." *See* ECF No. 51 at PageID.5589. But Petitioner invokes Civil Rule 59(e) in his Motion—which governs motions to alter or amend judgments. *See id.* Because this vehicle for relief is distinct from a reconsideration motion, this Court must construe Petitioner's Motion as a motion to amend or alter the judgment. *See Miller v. William Beaumont Hosp.*, 121 F.4th 556, 557 (6th Cir. 2024).

Indeed, district courts must deny a motion to alter or amend judgment if it merely relitigates old matters. *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 841 (6th Cir. 2018).

Petitioner challenges the Court's decision on his claims concerning: (1) sufficiency of the evidence for his convictions, ECF No. 51 at PageID.5992–96; (2) MICH. COMP. LAWS § 333.7212(1)(e)(x), *id.*; (3) prosecutorial misconduct, *id.* at PageID.5597; (4) ineffective assistance of trial counsel, *id.* at PageID.5598–602; (5) ineffective assistance of appellate counsel, *id.* at PageID.5603–06; (6) peremptory challenges, *id.* at PageID.5607–10; (7) Fourth Amendment deprivations, *id.* at PageID.5611–14; and (8) sentencing, *id.* at PageID.5615–18. But Plaintiff's Motion rehashes arguments already rejected in the March 28, 2024 Opinion and Order that denied habeas relief. *See* ECF No. 49 at PageID.5555–64, 5567–69, 5572–83. Because his Motion merely "relitigate[s] old matters," *Brumley*, 909 F.3d at 841, Petitioner's Motion seeking to amend or alter his judgment, ECF No. 51, will be denied.

And his Civil Rule 15(a)(2) Motion to Amend his Motion seeking to alter his judgment, ECF No. 55, will be denied. That is because Civil Rule 15(a)(2) applies to amending pleadings, and "motions are not considered pleadings" for Civil Rule 15(a)(2) purposes. *Nyambal v. Alliedbarton Sec. Servs.*, LLC, 344 F. Supp. 3d 183, 188 (D.D.C. 2018).

### III.

Moving to Petitioner's Motion seeking a certificate of appealability (COA), ECF No. 52, and Motion seeking leave to proceed *in forma pauperis* on appeal, ECF No. 53. Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a COA is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved

in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation and quoting citation omitted). As this Court already explained, "reasonable jurists would not debate this Court's conclusion that Petitioner is not entitled to habeas relief." ECF No. 49 at PageID.5586. Thus, Petitioner's Motion for a Certificate of Appealability, ECF No. 52, will be denied. And because an appeal would not be taken in good faith—as this Court explained before, *see* ECF No. 49 at PageID.5586–87—Petitioner's Motion for Leave to Proceed *In Forma Pauperis* on Appeal, ECF No. 53, will be denied.

### IV.

Accordingly, it is **ORDERED** that Petitioner's Motion to Alter or Amend, ECF No. 51, is **DENIED.**

Further, it is **ORDERED** Petitioner's Motion for a Certificate of Appealability, ECF No. 52, is **DENIED.**

Further, it is **ORDERED** that Petitioner's Motion for Leave to Proceed *In Forma Pauperis*, ECF No. 53, is **DENIED.**

Further, it is **ORDERED** that Petitioner's Motion to Amend his Motion, ECF No. 55, is **DENIED**.

Dated: March 5, 2025                                s/Thomas L. Ludington
                                                    THOMAS L. LUDINGTON
                                                    United States District Judge